Manly, .1.
If the case stood alone upon the mental incapacity of Jesse Whitaker, deceased, wo might feel .constrained to send it to a, jury to have an issue on that,point tried.
It seems an inquisition was had in Buncombe, according to the usages of law, which, resulted in a verdict that the *47 subject was non compos mentis, which was. reported to the County Coiirt at its April Session, 1857. From this there was an appeal to the Superior Court of the county, and this appeal was pending at the time of his death.
The evidence which has been laid before us preponderates, we feel at liberty to say, in favor of the finding of the jury, but as the inquisition was'not finally acted upon and settled by a jury upon testimony viva voce. it would be more in accordance with the caution with which'this court proceeds in matters oí so great importance, to send it to the customary tribunal to have the feet established the one way or the other.
But we do not think the case necessarily turns upon this point. There are other well settled principles of equity which dispose of it.
Whatever may he the decree of doubt left upon the pre-rise mental condition of Jesse Whitaker, about the time of he transactions in question — if he could not at that time le properly classed amongst non compotes mentis technically, t is nevertheless certain that he was very old, was pros-rated by disease and intemperance, and his memory a-ud .’ill, at least, exceedingly uncertain and fluctuating,
He was advised by friends, upon whose counsel he liad icretoibre relied, not to make the bargain without further iformation ; and it was then understood and agreed, the efendant Brown being present, that no farther action houkl bo taken ir, the’matter until the information needed _as obtained. ’■ ^
After this arrangement, the friends of Whitaker left the ouse, and thereupon, Brown, having remained, renewed le negotiation and effected the alleged sale of his land, The further fact in this case is established to our satis-.etion, tlia-t the price demanded and received for. the land s twice its tine Ya’ue. ‘
*48 Here then are extreme imbecility of mind in tbe subject of the alleged fraud — an opportunity selected when he was 1 without counsel,’ in fraud of an agreement — secrecy in the transaction, and imposition in the price.
These are sufficient, we think, to call into action the interference and aid of this court.
This occasion or source of equity jurisdiction is fully explained in the cases of Amis vs. Satterfield, 5 Ired. Eq. 173, and Freeman vs. Dwiggins, 2 Jones Eq. 162.
The voluminous evidence which has been filed inthis cause, establishes with sufficient clearness the narrative we have given, as the true state of the facts, according to the interpretation most favorable to the defendant) and the cases establish the principle, that the court will annul a contract made under such circumstances, and remit the parties as far as it is practicable to do so, to their previous positions. To this end a decree may be drawn, perpetuating tbe injunctions heretofore granted, annulling the contract marked A in the papers, and directing a return ot such notes, orders, or other securities as were given for the p urdíase ■ me n ey.